■ In the Matter of St. Agatha's Children's Home, Inc., Petitioner, v Arthur Y. Webb, as Commissioner of the State of New York Office of Mental Retardation and Developmental Disabilities, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, dated May 23, 1986, which, after a hearing, denied the petitioner's application to discharge James Boyle as a resident in its facility.

Adjudged that the petition is granted, the Commissioner's determination is annulled, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, the determination of the Hearing Officer is reinstated and confirmed, and the application is granted.

James Boyle, a profoundly retarded, autistic and deaf individual, who was described as multiply handicapped, was born on March 8, 1965. He has been institutionalized at the petitioner's facility since April 18, 1982. The petitioner is a division of the New York Foundling Hospital, a nonprofit agency which serves dependent and neglected children. As part of its program, the agency has opened a number of Intermediate Care Facilities (hereinafter ICF) designed to serve multiply handicapped children. The petitioner, which operates one such facility, does not have a highly structured setting and does not utilize aversive techniques in its treatment.

The respondent Office of Mental Retardation and Devlopmental Disabilities (hereinafter OMRDD) supervises ICF pro-

grams such as the one implemented by the facility at which James resides. Pursuant to regulations promulgated by OMRDD, the petitioner was required to consult with and obtain the permission of James' parents concerning such aspects of its program as change of behavior programs for him and the dissemination of information concerning James to other facilities which might be potential resources for him.

During the spring of 1985, there was an increase in aggressive and assaultive behavior on James' part including physical striking of staff members and other residents as well as other incidents which resulted in injury and a bus company's refusal to transport James to school. Such behavior continued unabated to the time of the hearing which was conducted with respect to the petitioner's recommendation that James be discharged from the petitioner's facility and enrolled in a more appropriate facility. A series of 29 different incidents of aggressive or assaultive behavior by James was summarized in documents which were admitted into evidence at the hearing.

The Hearing Officer, upon weighing the testimony of both sides and "considering the best interests of James at this stage in his life", determined that "an appropriate placement other than Saint Agatha should be found for him". Accordingly, OMRDD was directed to cooperate with the petitioner and James' parents in determining the type of program best suited to fulfilling James' needs. The respondent Commissioner, upon reviewing the evidence presented at the hearing, rejected the Hearing Officer's recommendation and directed that James remain at the petitioner's facility on the ground that "St. Agatha failed to prove by substantial evidence that they *[sic]* could not meet the needs of Mr. Boyle and that better alternative placements exist".

Upon transferal of a matter pursuant to CPLR 7804 (g), an Appellate Division is empowered to dispose of all issues in the proceeding itself or to remit the proceeding in the event the papers are insufficient. "This court's function in reviewing the substantiality of the evidence upon which an administrative agency has acted is to exercise a genuine judicial function and not to confirm a determination merely because it was made by such an agency" *(Matter of Diotte v Fahey, 97 AD2d 653)*.

Pursuant to the regulations outlined in the OMRDD's Manual of Policies and Procedures, the Commissioner's scope of review is limited to whether the decision of the Hearing Officer is supported by substantial evidence. While the Hearing Officer's determination is entitled to great weight, it is not

conclusive *(see, Matter of Simpson v Wolansky,* 38 NY2d 391, 394).

In the instant case, ample testimony was adduced to the effect that James' progress at the petitioner's facility has been quite limited and has, at times, regressed to the point where he poses a danger to those around him. Testifying staff members indicated that the petitioner had implemented the recommendations submitted by the Institute for Basic Research with the exception that it engage a deaf male individual as a companion for James. In the opinion of Dr. Lukens, supervising psychologist at the petitioner's facility, the petitioner's inability to implement an appropriate plan for James was attributable, in part, to the requirement that there be parental approval prior to the implementation of any behavior modification plans. As of the time of the hearing, James' parents had not approved of any changes. Moreover, unlike other institutions, the petitioner was powerless to restrict visitation in an effort to ascertain whether a control of visitation diminished a patient's disruptive behavior.

There clearly existed substantial evidence to support the determination of the Hearing Officer. Inasmuch as the respondent Commissioner's overruling of the Hearing Officer was not supported by substantial evidence, the determination under review is annulled and that of the Hearing Officer is reinstated and confirmed *(see, Tucker v Malone,* 114 AD2d 844, 845; *Matter of Bruemmer v Vecchio,* 93 AD2d 863). Thompson, J. P., Weinstein, Rubin and Harwood, JJ., concur.